Charles P. CIEUTAT,
Plaintiff-Appellant,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant-Appellee.

No. 86–3340.

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 1987.

Rehearing Denied Aug. 31, 1987.

William P. Schuler, Chalmette, La., for plaintiff-appellant.

Marquerite Lokey, Patrick A. Hudson, Attys., Office of the Gen. Counsel, Dept. of HHS, Dallas, Tex., for defendant-appellee.

Before WISDOM, JOHNSON, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge: *

Plaintiff-appellant Charles Cieutat (Cieutat) appeals the district court's summary judgment in favor of defendant-appellee Secretary of Health and Human Services (Secretary) dismissing Cieutat's suit, which sought to set aside the Secretary's denial of his claim for Social Security disability insurance benefits and supplemental security income (SSI) benefits under 42 U.S.C. §§ 423(a), 1381a. In his appeal to this Court, Cieutat asserts that the Social Security Appeals Council lacked authority to reopen his case, and, alternatively, if it had the authority, that it improperly failed to treat his 1981 work as a trial work period; that the district court erred in making insured status a prerequisite to his eligibility for SSI; and that the Appeals Council's final decision was not supported by substantial evidence. We hold that the Appeals Council had the power to reopen the Administrative Law Judge's (ALJ) decision; that it properly treated Cieutat's 1981 work as substantial gainful activity rather than as a trial work period; and that substantial evidence supports its determination that

Cieutat was not disabled. Although the district court erred in making insured status a requirement for SSI, we find the district court's error harmless because the Appeals Council applied the proper legal standards in denying Cieutat SSI benefits. Therefore, we affirm the district court's judgment upholding the decision of the Appeals Council.

**Facts and Proceedings Below**

At the time of the Secretary's decision, Cieutat was twenty-six years old and had a ninth grade education. He had worked for periods of varying duration as a stock clerk, framing carpenter, welder's helper, truck driver, and oilfield worker. In addition to the application for benefits that is the subject of this appeal, Cieutat previously had applied on two occasions for Social Security benefits, but both of the earlier applications were denied without appeal. Cieutat filed the present application on October 6, 1982, claiming that he was unable to work due to a back impairment. The Social Security Administration (SSA) denied this application initially and upon reconsideration. On July 19, 1983, Cieutat received a *de novo* hearing before an ALJ. Cieutat appeared in person and was represented by counsel. Cieutat's wife and his mother also appeared before the ALJ.

At the July 1983 hearing before the ALJ, Cieutat alleged the onset of his disability was in September 1977, when at age nineteen he fell at work and injured his back. He testified that he had been in pain since the 1977 injury, that he could sit comfortably only for ten minutes at a time, and that walking exacerbated the pain. Cieutat said that at first the pain was sporadic, but that since 1979 or 1980 it had worsened in intensity and had become constant. He stated that he could not bend to pick up objects on the floor and that he had difficulty opening doors. He said he took medication and

---

* Of the numerous issues raised by the defendants on appeal, only some have precedential value. Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principals of law imposes needless expense on the public and burdens the legal

profession." Pursuant to that rule the Court has determined that the nonprecedential portions of this opinion should not be published.

The places at which the published opinion omits parts of the unpublished opinion are indicated by asterisks.

used a heating pad and hot soaks daily to relieve the pain. He also said that he had been treated for depression and for an addiction to the painkillers he had taken for a period of time following the 1977 injury. Cieutat's wife and mother corroborated his testimony about his pain, depression, and drug addiction. Based upon this testimony and medical reports from ten physicians, the ALJ found that Cieutat was disabled within the meaning of the Social Security Act. On August 11, 1983, the ALJ issued a decision awarding disability benefits and directing the component of the SSA responsible for SSI benefits to award those if Cieutat otherwise met the SSI eligibility requirements.

Subsequent to the ALJ's decision, the SSA received a Work Activity Report, dated January 23, 1984, and submitted on behalf of Cieutat. The Report stated that Cieutat had worked for six months in 1981 as a "truck driver/electrician" for ATI, Inc. The same month, the SSA received an employer report prepared by ATI, Inc., which verified that for the six-month period between July and December 1981 Cieutat earned approximately $1,000 per month, along with a memorandum from the Office of Disability Operations calling Cieutat's work activity to the SSA's attention.

Based on the receipt of these documents, on November 30, 1984, the Appeals Council on its own initiative reopened the ALJ's decision. On March 27, 1985, the Appeals Council issued a revised decision finding that Cieutat was not disabled within the meaning of the Social Security Act. Specifically, the Appeals Council determined that Cieutat had a severe back impairment, and that he had suffered from drug abuse, which had been successfully treated, and from a brief depressive condition, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1 of the regulations.[1] The Appeals Council also found that Cieutat's testimony regarding his extreme pain was inconsistent with the medical evidence and with his level of activity; that Cieutat could not perform his past relevant work, but that he had the residual functional capacity, which was not significantly affected by nonexertional limitations, for at least sedentary work; and that considering his residual functional capacity, age, education, and work experience, Cieutat was not disabled and, therefore, not entitled to disability insurance or SSI benefits.

After the Appeals Council's decision, Cieutat requested judicial review by timely filing a complaint in the United States District Court for the Middle District of Louisiana. Upon submission of cross-motions for summary judgment, the magistrate issued Findings and Conclusions recommending that Cieutat's motion be granted. The dis-

1. The SSA regulations set forth a five-step sequential process in evaluating disability claims. *See* 20 C.F.R. § 404.1520. If the claimant is determined not disabled at any step in the process, the evaluation process stops. *Hampton v. Bowen,* 785 F.2d 1308, 1311 (5th Cir.1986). A claimant presently engaged in substantial gainful activity (*i.e.,* working) will not be found to be disabled regardless of medical findings. If the claimant is not working, the Secretary must determine whether his physical or mental impairment is severe and meets the durational requirements of the Act. If the impairment is not severe or the durational requirements are not met, the claimant is determined not disabled and the inquiry ends. Where the impairment is severe, the Secretary must then determine whether the impairment is so severe that the claimant will be presumed to be disabled. This determination is made by comparing the impairment to a specific Listing of Impairments in the SSA regulations. *See* 20 C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condi-

tion is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. When the claimant has a severe impairment that is not a listed or equivalent impairment, the Secretary must determine whether, despite the impairment, the claimant has the residual functional capacity to do the kind of work he did in the past. *Id.* §§ 404.-1520(e), 404.1545. If so, he is not disabled. Finally, if the claimant cannot do any work he did in the past, the Secretary must determine whether the claimant can perform any other work available in the national economy. *Id.* § 404.1520(f). In making this determination, the Secretary has to consider the claimant's age, education, and work experience, as well as his residual functional capacity. *Id.* § 404.1561. Cieutat and the Secretary agree that Cieutat is not presently working, that his impairment is severe but is not one (or the equivalent thereof) listed in Appendix 1, and that he cannot do past relevant work. They dispute whether he can perform other substantial gainful activity.

trict court on March 25, 1986 rejected this recommendation, entered judgment in favor of the Secretary, and denied Cieutat's motion for summary judgment. Cieutat appeals that decision.

## Discussion

### A. Authority to Reopen

Acting under the authority of the SSA regulations, *see* 20 C.F.R. §§ 404.987–404.-989, 416.1487–416.1489, the Appeals Council on November 30, 1984, reopened the ALJ's August 11, 1983, hearing decision. Cieutat's first argument for reversal is that in so doing, the Appeals Council violated the SSA's own regulations.

In addressing this argument, we first note that our review of an agency's regulations is circumscribed. *See* 5 U.S.C. § 706(2)(A)[2]; *DeSoto General Hosp. v. Heckler*, 766 F.2d 182, 184–85 (5th Cir. 1985). It is especially so in reviewing regulations promulgated by the Secretary in implementing the Act, since Congress has "conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act," including those involved here. *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981); *Mercy Hosp. v. Heckler*, 777 F.2d 1028, 1031 (5th Cir.1985). Where, as here, the statute expressly entrusts the Secretary with responsibility for implementing a provision of the Act by regulation,[3] judicial review is limited to determining whether the regulations exceed the Secretary's statutory authority and whether they are arbitrary or capricious. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983);

*Marcello v. Bowen*, 803 F.2d 851 (5th Cir. 1986). The parties do not dispute, and we have no doubt, that the SSA regulations in question here were properly promulgated in accordance with the rule-making authority granted to the SSA under 42 U.S.C. § 405(a) and that they are neither arbitrary nor capricious. *Accord Butterworth v. Bowen*, 796 F.2d 1379, 1384 (11th Cir.1986).

Cieutat contends, however, that the Secretary's interpretation of section 404.988 to permit him to reopen and revise the ALJ's decision in this case is inconsistent with language of the SSA regulations. In cases involving such challenges, longstanding precedent obligates us to give great deference to the agency's interpretation of its own regulations. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Baylor Univ. Medical Center v. Heckler*, 758 F.2d 1052, 1062 (5th Cir.1985). Given this deference, a party who challenges the agency's interpretation necessarily shoulders a heavy burden. *Johnson's Professional Nursing Home v. Weinberger*, 490 F.2d 841, 844 (5th Cir.1974). As the reviewing court, we are not free to set aside the Secretary's interpretation simply because we may have interpreted the regulations differently as an original matter. *Marcello*, 803 F.2d at 855; *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir.1984). We must accept the Secretary's interpretation unless that interpretation is plainly inconsistent with the language of the regulations.[4]

---

**2.** The Administrative Procedure Act directs that a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

**3.** The Act grants the Secretary "full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of [the disability benefits program of the Act], which are necessary or appropriate to carry out such provisions" and directs him to adopt "rules and regulations to regulate and provide for the nature and extent of the proofs

and evidence and the method of taking and furnishing the same" in disability cases. 42 U.S.C. § 405(a).

**4.** As stated by the Supreme Court, in construing administrative regulations, "a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt.... [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Udall*, 85 S.Ct. at 801 (quoting *Bowles*, 65 S.Ct. at 1217.

*United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Diaz-Soto v. INS,* 797 F.2d 262, 263 (5th Cir.1986); *see also* 2 K. Davis, *Administrative Law Treatise* § 7:22 (2d ed. 1979).

Accordingly, we must determine whether the Secretary's interpretation of section 404.988 as sustaining the jurisdiction of the Appeals Council to reopen Cieutat's case is plainly inconsistent with the language of the regulations.[5]  In pertinent part, section 404.988 provides:

5. Sections 404.987–404.996 govern the reopening of a determination or decision regarding *disability* benefits; whereas the reopening of determinations or decisions regarding *SSI* benefits is governed by 20 C.F.R. §§ 416.1487–416.-1494. In reopening the ALJ's decision in Cieutat's case, the Appeals Council relied on both of these sets of regulations. The only difference between the disability and SSI regulations concerning the power of the Appeals Council to reopen is that the regulations allow reopening in disability cases for four years with good cause, but permit reopening in SSI cases for only two years with good cause. *Id.* § 416.-1488(b). Since here the Appeals Council's reopening on November 30, 1986 was less than two years from the notice of initial determination, which was dated December 1, 1982, the difference in time periods is immaterial. For the sake of simplicity, therefore, we will discuss the authority of the Appeals Council to reopen only in the context of the regulations governing the reopening of disability benefit determinations or decisions. The same analysis applies for reopening cases involving SSI benefits.

6. The full text of clause (c) of section 404.988 is as follows:

"(c) At any time if—

"(1) It was obtained by fraud or similar fault;

"(2) Another person files a claim on the same earnings record and allowance of the claim adversely affects your claim;

"(3) A person previously determined to be dead, and on whose earnings record your entitlement is based, is later found to be alive;

"(4) Your claim was denied because you did not prove that the insured person died, and the death is later established—

"(i) By reason of an unexplained absence from his or her residence for a period of 7 years; or

"(ii) By location or identification of his or her body;

"(5) The Railroad Retirement Board has awarded duplicate benefits on the same earnings record;

"(6) It either—

"(i) Denies the person on whose earnings record your claim is based gratuitous wage

"A determination, revised determination, decision, or revised decision may be reopened—

"(a) Within 12 months of the date of the notice of the initial determination, for any reason;

"(b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.-989, to reopen the case; or

"(c) At any time if—[certain here immaterial specified conditions are met]."[6]

credits for military or naval service because another Federal agency (other than the Veterans Administration) has erroneously certified that it has awarded benefits based on the service; or

"(ii) Credits the earnings record of the person on which your claim is based with gratuitous wage credits and another Federal agency (other than the Veterans Administration) certifies that it has awarded a benefit based on the period of service for which the wage credits were granted;

"(7) It finds that the claimant did not have insured status, but earnings for the appropriate period of time were later credited to his or her earnings record;

"(8) It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made;

"(9) It finds that you are entitled to monthly benefits or to a lump sum death payment based on the earnings of a deceased person, and it is later established that:

"(i) You were convicted of a felony or an act in the nature of a felony for intentionally causing that person's death; or

"(ii) If you were subject to the juvenile justice system, you were found by a court of competent jurisdiction to have intentionally caused that person's death by committing an act which, if committed by an adult, would have been considered a felony or an act in the nature of a felony;

"(10) It either—

"(i) Denies the person on whose earnings record your claim is based deemed wages for internment during World War II because of an erroneous finding that a benefit based upon the internment has been determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or

"(ii) Awards the person on whose earnings record your claim is based deemed wages for internment during World War II and a benefit based upon the internment is determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or

As relevant to this action, section 404.-989(a)(1) states that good cause exists if "[n]ew and material evidence is furnished." Since the Appeals Council's reopening of Cieutat's case on November 30, 1984 was more than twelve months after Cieutat had been given notice of the initial determination, which was dated December 1, 1982, the regulations permitted reopening only upon a finding of good cause by the Appeals Council.

Assuming for the moment that the Appeals Council properly determined that good cause existed, nothing in the language of section 404.988 appears on its face inconsistent with the Secretary's reading of the regulation to permit the Appeals Council to reopen Cieutat's case. Cieutat does not contend otherwise. Cieutat argues, however, that such an interpretation is inconsistent with the Secretary's regulations pertaining to the administrative "review" process, see 20 C.F.R. §§ 404.967–404.983, and those pertaining to procedures for "reopening," see id. §§ 404.982–404.-996, when read in their entirety.

The regulatory framework relating to the SSA Disability Benefits Program, see Title II of the Act, 42 U.S.C. §§ 401–433, is contained in Part 4 of the SSA regulations. 20 C.F.R. §§ 404.1–404.2127 (1986). Subpart J of Part 4 details the admittedly complex administrative procedures for handling disability claims. Id. §§ 404.900–404.999d. The steps in the administrative process include an initial determination (which is made without a hearing by the SSA or by an appropriate state agency upon receipt of an application for benefits), a reconsideration determination, a hearing before an ALJ, and Appeals Council review. Reconsideration is the first step in the administrative review process available

to a claimant who is unsuccessful at the initial determination stage. Id. § 404.907. It consists of a review by either the SSA or the state agency of the claimant's application, along with any new evidence presented by the claimant. Id. § 404.913. Reconsideration must be sought within sixty days of the notice of the initial determination unless extended for good cause. Id. § 404.909. If the claimant is dissatisfied with the reconsidered determination, he may request an evidentiary hearing before an ALJ, following which the ALJ issues a decision granting or denying benefits. Id. § 404.929. An ALJ hearing must be requested within sixty days of notice of the reconsidered determination unless extended for good cause. Id. § 404.933. If the claimant is dissatisfied with the ALJ's decision, he may, within sixty days of notice of that decision (subject to extension for good cause), seek review by the Appeals Council.[7] Id. §§ 404.967–404.968. The regulations also permit the Appeals Council to initiate review of the ALJ's decision on its own motion within sixty days after the date of the hearing decision. Id. § 404.969.[8]

■ Cieutat argues that the Secretary's reading of section 404.988 to allow the Appeals Council to "reopen" a decision for twelve months for any reason, and for four years with good cause, renders meaningless section 404.969, which specifically limits the Appeals Council's ability to review on its own motion an ALJ's decision to sixty days from the date of the decision. According to Cieutat, reading section 404.-988 this way would mean that the sixty-day limitations period of section 404.969 would have no effect, because its limit could always be overridden by the one- and four-

---

"(11) It is incorrect because—
"(i) You were convicted of a crime that affected your right to receive benefits or your entitlement to a period of disability; or
"(ii) Your conviction of a crime that affected your right to receive benefits or your entitlement to a period of disability is overturned."

7. Following decision at this stage, the claimant may take his case to federal court. Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), authorizes judicial review of "any final decision of the Secretary made after a hearing to which [the claimant] was a party. . . ."

8. Section 404.969 states:
    "Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address."

year limits of section 404.988. Therefore, Cieutat argues, the Secretary's interpretation of section 404.988 is inconsistent with the language of the regulations governing procedures for review.

The Secretary counters, persuasively we think, that this argument fails to recognize that the time limits in these two sections are not measured symmetrically.[9] The sixty-day time period during which the Appeals Council may review a case on its own motion begins running from the date of the ALJ's hearing decision. *See id.* § 404.-969.[10] In contrast, the one- and four-year periods during which the Appeals Council may reopen a case commence on the date

the claimant is sent notice of the *initial determination* on his application for benefits. As the Secretary explains, given the time it takes to process a claim through the four levels of the administrative process, it is quite possible that the twelve-month period during which a case may be reopened without a showing of good cause will expire *before* the sixty-day review period has run.[11] Thus, although it will often be the case, as here, that the sixty-day review period expires before the twelve-month reopening (without cause) period, this will not always be so. Hence, since there are situations where the Appeals Council would be free to review an ALJ's decision, but where

9. Moreover, the Secretary maintains, Cieutat's argument fails to recognize the separateness of, and distinct purposes served by, the reviewing and reopening provisions. Their separateness, he argues, is illustrated not only by the different bases from which the periods run, but also by the fact that the two sets of provisions are placed under distinct subheadings within the SSA regulations; that review procedures are available only to the Appeals Council, whereas a case presumably may be reopened by any component within the SSA that otherwise has jurisdiction; and that while only an ALJ's hearing decision may be reviewed, a determination or decision made at any level of the administrative process may be reopened. The Secretary contends further that the consistency of his interpretation with a reading of the regulations in their entirety becomes clearer by an understanding of the distinct purposes served by the two sets of provisions. The Secretary maintains that the review procedures seek to create a means for establishing administrative finality while also providing a basis for routine reviews of decisions within the SSA during the period of appeal before the Secretary's decision becomes subject to judicial review. By contrast, the purpose of the reopening provisions, according to the Secretary, is to afford the SSA a means of administrative reconsideration, in extraordinary circumstances, after an otherwise final determination or decision has been reached at any level of the administrative process. *See Bloodsworth v. Heckler,* 703 F.2d 1233, 1237–38 (11th Cir. 1983); *see also Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 982–83, 51 L.Ed.2d 192 (1977) (suggesting that the review and reopening procedures serve distinct functions). Thus, argues the Secretary, since reopening is independent of and distinct from review, his interpretation of section 404.988 is not inconsistent with the SSA regulations read as a whole.

10. This conclusion follows from the definition of decision provided in the SSA regulations. Section 404.901 explains that for purposes of

Subpart J, "[d]ecision means the decision made by an administrative law judge or the Appeals Council." By contrast, the same section defines a determination as "the initial determination or the reconsidered determination." Thus, since section 404.969 permits own-motion review by the Appeals Council within sixty days of "a hearing decision or dismissal," the time period for review necessary commences on the date of the ALJ's hearing decision, and not on the date of the state agency's or the SSA's initial or reconsidered determination.

11. For example, suppose a claimant received an initial determination denying him benefits from a state agency on January 1, 1987. This determination triggers the limitations periods on the SSA's ability to reopen the case *sua sponte,* so that the Appeals Council (or, presumably, the ALJ) may reopen without cause through January 1, 1988, and with cause through January 1, 1991. In the meantime, since the claimant was denied benefits, he will probably seek reconsideration. Assuming he waits until the end of the sixty-day period that he has to do so, and that reconsideration occurs within thirty days after that, the claimant may be expected to receive notice of the agency's decision upon reconsideration on about April 1, 1987. The claimant then has another sixty days within which to request a hearing before an ALJ. Assuming he makes such a request sixty days after receiving notice of the state agency's decision upon reconsideration, the SSA would get the request on about June 1, 1987. If the hearing before the ALJ is held six months later, and the ALJ issues his decision only a month after the hearing, the ALJ's hearing decision could be expected to be released by January 1, 1988. From that date, the Appeals Council has sixty days, until approximately March 1, 1988, to *review* the case on its own motion. Thus, under this hypothetical scenario, the Appeals Council could *reopen* without cause only through January 1, 1988, but could initiate *review* through March 1, 1988.

it could not reopen the same ALJ decision absent a showing of good cause, we do not think that the Secretary's interpretation of section 404.988 robs the sixty-day limit of section 404.969 of all its meaning or effect.

Other circuits that have faced this issue have reached irreconcilable conclusions about how the regulations should be interpreted. The Fourth and Eighth Circuits have adopted the interpretation of section 404.988 urged by the Secretary. *See Zimmermann v. Heckler,* 774 F.2d 615, 617 (4th Cir.1985); *Munsinger v. Schweiker,* 709 F.2d 1212 (8th Cir.1983); *Higginbotham v. Heckler,* 767 F.2d 408, 410 (8th Cir.1985). These courts hold the view that section 404.988 refers to reopenings at the request of either the SSA or a claimant when it states the conditions under which decisions or determinations may be reopened, and therefore permits reopening at the initiative of the Appeals Council according to the graduated schedule set forth in that section.

The Eleventh Circuit has read section 404.988 differently. *See Butterworth v. Bowen,* 796 F.2d 1379 (11th Cir.1986). That Circuit's interpretation, which Cieutat asks us to follow, invokes a "components" analysis: Section 404.988 allows reopening by both the SSA and claimants, but reopening initiated by the SSA is permissible only by a component or level of the SSA that properly has jurisdiction over the claim at the time of the reopening. *Id.* at 1385–88.

Jurisdiction of the Appeals Council "component" of the SSA is governed by section 404.969, so that the Appeals Council may review on its own initiative decisions by an ALJ or by the Appeals Council itself only in accordance with the sixty-day limitation imposed by section 404.969. *Id.* at 1389.

Most recently, the First Circuit has adopted yet another interpretation of section 404.988. *See McCuin v. Secretary of Health and Human Services,* 817 F.2d 161 (1st Cir.1987). According to that court's view, section 404.988 should be read as allowing reopening only upon the basis of motions by claimants.[12] Under this "claimants only" interpretation, neither the Appeals Council nor any other component of the SSA can reopen a case on its own initiative, but the Appeals Council may still invoke its own motion review pursuant to section 404.969.

In determining which of the available interpretations to adopt in this case, we are mindful of the deference we must give to the Secretary's interpretation of his agency's own regulations. In light of the fact that we do not consider that the interpretation urged by the Secretary deprives the sixty-day limitations period of section 404.-969 of all its force, we cannot say that the Secretary's reading of section 404.988 as allowing the Appeals Council to reopen the ALJ's decision in Cieutat's case is plainly inconsistent with the language of the regulations.[13] We therefore decline to invali-

---

12. The First Circuit in *McCuin* rested its interpretation in large part upon the plaintiff's due process challenge to a reading of section 404.-988 that would make the finality of a favorable decision subject to the Appeals Council's ability to reopen the case and withdraw benefits due to errors made in the determination for up to four years. *McCuin,* 817 F.2d at 171–75. Since Cieutat has raised no due process attack on the SSA's right to reopen his case, we do not consider whether the due process clause of the Fourteenth Amendment might restrict the Appeals Council's ability to reopen the case *sua sponte* pursuant to section 404.988. However, we are unable to conclude that the Secretary's interpretation of section 404.988 as not limited to reopening on motion of the claimant is plainly inconsistent with the language of the regulations. As pointed out in *Butterworth,* 796 F.2d at 1385, and *Munsinger,* 709 F.2d at 1215, section 404.988 allows reopening to disallow benefits granted. *See* § 404.988(c)(1), (c)(2), (c)(3),

(c)(5), (c)(9), and (c)(11)(i), quoted in note 6, *supra.*

13. While we cannot say that the *Butterworth* analysis is unreasonable, or that we would not adopt it as an original proposition, that is not the question. *Marcello,* 803 F.2d at 855. Rather, the question is whether the Secretary's interpretation of his own regulations is plainly inconsistent with their language or wholly unreasonable. *Diaz-Soto,* 797 F.2d at 263–64. It appears to us that *Butterworth* is to some extent based on the view that the Secretary's interpretation deprives the sixty-day limit of section 404.969 of all its force, a view which we regard as erroneous for the reasons stated in the text. Likewise, we conclude that *Butterworth* pays insufficient deference to the Secretary's interpretation. The limitation which *Butterworth* places on the Appeals Council's power to reopen is nowhere expressly stated in the regulations.

date the Secretary's interpretation of these regulations, according to which the SSA can reopen cases on its own initiative under the graduated conditions set forth in section 404.988. Consequently, we conclude that if the Appeals Council properly determined that good cause existed, it had the power, pursuant to 20 C.F.R. § 404.988, to reopen the decision of the ALJ in Cieutat's case.

■ We must now consider whether the Appeals Council had good cause to reopen. According to the regulations, good cause exists if new and material evidence is furnished, a clerical error was made, or the evidence considered in making the determination shows on its face that an error was made. 20 C.F.R. § 404.989. The Appeals Council found that because it had received new and material evidence (namely, a Work Activity Report for Cieutat dated January 23, 1984 showing six months of employment in 1981 by ATI, Inc. as a truck driver/electrician, supporting employer verification of earnings, and a memorandum

from the Office of Disability Operations regarding the 1981 work), good cause existed.

Cieutat argues that this evidence was available to the ALJ and, therefore, was not new. He is correct that there was admitted into evidence before the ALJ a vocational work report dated October 17, 1982, listing a job at ATI, Inc. Significantly, however, this report does not state the length of time Cieutat had worked. Moreover, where the report asks for a description of each job held, Cieutat wrote: "Jobs not explained—Did not work on long enough." Additionally, although Cieutat testified at the hearing that he had worked briefly as a security guard, he did not mention that he had worked for six months in 1981 for ATI, Inc. as a truck driver/electrician. In fact, he testified that he had not held any job successfully since 1977.[14] The Secretary argues, and we agree, that taken as a whole, the evidence before the ALJ suggested that Cieutat engaged in no work

---

As *McCuin* observes, *Butterworth* "suffers from the defect of relying on many detailed distinctions of which the regulations make no mention." *McCuin,* 817 F.2d at 171. Section 404.955(c), recognizing the Appeals Council's power to reopen, merely refers to section 404.987, which in turn refers to section 404.988, and neither contains the limitation imposed by *Butterworth.* The inference which *Butterworth* draws from the review provisions of the regulations is less than compelling because of their separateness from the reopening regulations, each being under distinct subheadings. *See* note 9, *supra.* The *Butterworth* interpretation also leads to the arguably anomalous result that an initial determination, as to which reconsideration was not timely sought, could thereafter be reopened *only* by the lowest administrative decision-making component of the SSA, and not by any higher components, including the ALJ or Appeals Council levels. Reopening, of course, can be favorable to the claimant. Given the vastness of the Social Security claims process, many errors are bound to occur as to which reopening would be appropriate, and, given that reopening is expressly authorized for periods many times as long as those for appeal, to restrict it (where the appeal time has elapsed) to the component making the decision to be reopened, which may often be the *lowest* level component, arguably may substantially frustrate the purpose of the reopening regulations. While an analogy to the court system tends to support *Butterworth,* the propriety of such an analogy is questionable given that the Social

Security system is an administrative agency and that within the system factual review is more plenary than within the court system.

The Secretary's unpublished internal operating manual (Program Operations Manual System) restricts the authority to reopen to "the component (and job position(s)) which made the determination that has become final and that is being reopened or the component (and job position(s)) which has the authority to review and, if necessary, revise the determination." *Id.* § 04010.030. While *Butterworth* construes this to mean that the component having review authority must reopen within the time that it could review, that is not the only reasonable interpretation. The Secretary's interpretation, that the component having review authority means the component which would have had authority to review if timely appeal had been taken and that "the determination" as used in that connection refers back to the earlier phrase, "the determination *that has become final and that* is being reopened" (emphasis added), is also reasonable. Hence we defer to the Secretary's interpretation of his own internal operating manual.

14. Cieutat gave inaudible or nonresponsive answers to several questions by the ALJ and by his attorney concerning his post-injury work history; however, he did clearly respond negatively when his attorney asked whether he had been able successfully to hold any type of job since the 1977 injury.

of substance after 1977. Cieutat's testimony indicates that he misled the ALJ by giving the appearance that the longest he had worked was for three to six weeks as a security guard. The October 17, 1982 vocational report that was in evidence before the ALJ is also unclear, if not intentionally misleading, with respect to the duration of Cieutat's employment by ATI, Inc. Since the evidence as a whole before the ALJ suggested that Cieutat had not engaged in any work of substance since 1977, when in fact he had, the subsequently obtained evidence may properly be classified as "new" evidence.

The evidence in question is also "material." Interpreting a similarly worded requirement in the statutory provision that allows a district court to order additional evidence to be taken by the Secretary, *see* 42 U.S.C. § 405(g), this Court has stated that evidence is material "only where there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Dorsey v. Heckler*, 702 F.2d 597, 604–05 (5th Cir.1983). Here that standard is met. Whereas the evidence reviewed by the ALJ suggested that Cieutat had not engaged in substantial gainful activity since 1977, the January vocational report and verified earnings indicated that he worked steadily for about six months in 1981 at well over minimum wage compensation. We believe there was at least a reasonable probability that evidence of substantial gainful activity performed in 1981 would have changed the outcome of the Secretary's disability determination; in fact, this evidence did lead the Appeals Council to reverse the ALJ's decision. We determine that the evidence in question was both new and material. We conclude, therefore, that good cause existed for the Appeals Council to reopen the ALJ's decision regarding Cieutat's disability.[15]

### B. Trial Work Period

Cieutat argues that even if the Appeals Council had the authority to reopen the ALJ's decision, his 1981 work qualifies as "trial work" under 42 U.S.C. § 422(c) and, consequently, the Appeals Council should have disregarded it in determining whether he was disabled. This argument lacks merit. As a general rule, the Secretary can consider work done by a claimant after the alleged onset of disability in determining whether the claimant was or is disabled. *See Sigmon v. Califano*, 617 F.2d 41, 42–43 (4th Cir.1980). Section 422(c)(2) creates an exception to this rule that precludes the Secretary from considering services performed during a period of trial work "in determining whether ... disability has ceased ... during such period." This section, which defines trial work, also provides that "[a] period of trial work for any individual shall begin with the month in which he becomes entitled to disability insurance benefits...." Thus, by its terms, section 422(c) appears to preclude the Secretary only from considering work done *after* disability commences and only for purposes of determining whether the disability has *ceased.* Since the Appeals Council considered Cieutat's 1981 work for purposes of determining whether Cieutat ever became

15. Citing the Supreme Court's opinion in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Secretary argues that the district court and, consequently, this Court lack subject matter jurisdiction to review the decision of the Appeals Council to reopen the ALJ's decision. *Sanders* held that section 205(g) of the Act, which allows a claimant to obtain judicial review of "any *final* decision of the Secretary made after a hearing to which he was a party," 42 U.S.C. § 405(g) (emphasis added), does not authorize judicial review of the Secretary's *refusal* to reopen a hearing decision. 97 S.Ct. at 986. Unlike the situation in *Sanders*, however, here the basis for judicial review is not the decision respecting reopening, but rather the admittedly reviewable decision denying benefits. We note that without making explicit reference to the basis for jurisdiction, courts in several circuits, including this one, have reviewed similar challenges to Appeals Council decisions to review or reopen ALJ decisions. *See, e.g., Mullen v. Bowen*, 800 F.2d 535 (6th Cir.1986) (en banc); *Butterworth v. Bowen*, 796 F.2d 1379 (11th Cir.1986); *Deters v. Secretary of Health, Education & Welfare*, 789 F.2d 1181 (5th Cir.1986); *Munsinger v. Schweiker*, 709 F.2d 1212 (8th Cir.1983). Thus, assuming a federal court can review an Appeals Council's decision to reopen consistently with the *Sanders* holding, this Court should have jurisdiction over Cieutat's challenge to the Appeals Council's reopening of his case inasmuch as the reopening forms the basis for the denial of benefits of which Cieutat complains.

disabled, and since Cieutat never established an entitlement to benefits, the trial work period exception in section 422(c) would seem not to apply to the Appeals Council's consideration of Cieutat's 1981 work.

■ Even if the trial work exception in section 422(c) could otherwise apply to preclude consideration of Cieutat's 1981 work, however, the limitation placed on section 422(c) by 20 C.F.R. § 404.1592(e) dictates that Cieutat's work does not qualify as a trial work period.[16] This SSA regulation states that a trial work period "cannot begin before the month in which [the claimant files his] application for benefits...." Since Cieutat performed the work in question in 1981 and did not apply for benefits until October 6, 1982, section 404.1592(e) mandates that his work does not qualify as a trial work period.[17] The Secretary, therefore, properly considered Cieutat's 1981 work in determining his disability status.

### C. Supplemental Security Income Benefits

SSI benefits, authorized by Title XVI of the Act, 42 U.S.C. §§ 1381–1383c, provide assistance to a disabled needy claimant without regard to the claimant's coverage under the Act for disability insurance benefits. *See Thomas v. Schweiker,* 666 F.2d 999, 1001 n. 1 (5th Cir.1982). To be eligible for SSI benefits, a claimant must be disabled and must have sufficiently limited income and resources. 42 U.S.C. §§ 1382c, 1382(a). In contrast to the insured status eligibility requirements for disability insurance benefits,[18] there are no eligibility period requirements for SSI benefits. *See Dorsey v. Heckler,* 702 F.2d 597, 606 (5th Cir.1983). The SSA regulations provide that an application for SSI benefits remains effective from the date of application to the date of the final decision by the Secretary, or the date of court review, whichever is later. *See* 20 C.F.R. § 416.330; *Dorsey,* 702 F.2d at 606–07.

■ Cieutat correctly asserts that the district court erred in basing its affirmance of the Appeals Council's denial of benefits in part on the termination of his insured status in December 1978. Nonetheless, this error is immaterial to our decision. Unlike the district court, the Appeals Council properly applied the Title II eligibility requirements only to Cieutat's claim for disability insurance benefits. It also properly applied the statutory provisions and regulations governing the determination of disability for purposes of SSI benefits in reaching its decision denying SSI benefits. *See infra.* Thus, the Appeals Council did not make the error made by the district court. Where, as here, appeal is taken from a district court's summary judgment in favor of the Secretary, this Court has held that our review is to be made independently of the determinations of the district court, and without regard to whether the

---

**16.** The Fourth Circuit has determined that former 20 C.F.R. § 404.1536(c), the predecessor of 20 C.F.R. § 404.1592(e), is a valid limitation of, and lies well within the statutory purposes of, section 422(c). *Sigmon,* 617 F.2d at 43.

**17.** Cieutat contends that by virtue of two applications which he filed prior to his present application, he satisfies 20 C.F.R. § 404.1592(e). He refers to applications filed on February 10, 1978 and May 8, 1981. These applications, however, were administratively denied on February 14, 1978 and June 27, 1981, respectively, and the denials were never appealed. Consequently, these earlier applications are irrelevant; they are not validly filed applications for purposes of determining Cieutat's entitlement to benefits, *see* 42 U.S.C. § 423, and, hence, for purposes of trial work period qualifications. Moreover, since those applications are not presently before this Court, we cannot now review the merits of the resulting determinations denying benefits.

*Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Dorsey v. Heckler,* 702 F.2d 597, 606 & n. 11 (5th Cir.1983) (court considered eligibility for benefits only on basis of applications presently before the court). Accordingly, only Cieutat's present application may be considered in determining whether his work qualifies as a trial work period; since the 1981 work occurred before the 1982 application, 20 C.F.R. § 404.1592(e) prevents application of the trial work period exception, were it otherwise to apply.

**18.** For a claimant to be eligible for disability benefits, in addition to being disabled he must meet the Act's special insured status earnings requirement. *See* 42 U.S.C. §§ 416(*l*)(3), 423(c)(1). Since Cieutat met this requirement only through December 31, 1978, he was eligible for disability benefits only if he became disabled on or before that date. *See, e.g., Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986).

**360**

district court acted correctly. *Thomas,* 666 F.2d at 1001 n. 2 (citing *Olson v. Schweiker,* 663 F.2d 593 (5th Cir.1981)). Accordingly, despite the district court's error, since the Secretary, acting through the Appeals Council, applied the proper legal standards in denying SSI benefits, we must uphold the Secretary's decision if it is supported by substantial evidence.

For the reasons stated in the following unpublished portion of our opinion, we conclude that substantial evidence supports the Secretary's determination that Cieutat was not disabled.

    \*    \*    \*

**Conclusion**

The Appeals Council had the power to reopen the ALJ's decision regarding Cieutat's claims for benefits. It applied the proper legal standard in treating Cieutat's 1981 work as substantial gainful activity rather than as a trial work period and in determining his eligibility for disability insurance and SSI benefits. In addition, substantial evidence supports the Appeals Council's determination that Cieutat is not disabled within the meaning of the Social Security Act. Accordingly, we affirm the district court's decision upholding the Secretary's denial of benefits.

AFFIRMED.