Allen SHEPPARD, Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of the Department of Health & Human Services.

No. 89–5288.

United States Court of Appeals, District of Columbia Circuit.

Argued May 1, 1990.

Decided June 26, 1990.

---

Randal Smith–Minor, of the bar of the U.S. District Court for the District of Co-

lumbia, pro hac vice, by special leave of the Court, with whom Lynn E. Cunningham, Washington, D.C., was on the brief, for appellant.

Marina Utgoff Braswell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellee. Daniel J. Standish, Asst. U.S. Atty., also entered an appearance for appellee.

Before EDWARDS, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Having won his case before an administrative law judge, a social security claimant saw certain retroactive benefits recalculated and reduced by the Appeals Council of the Social Security Administration. He attacks this reduction on three grounds: that the Appeals Council lacked authority to reopen the ALJ's decision on its own motion; that it improperly recalculated and reduced the amount of retroactive disability benefits; and that the SSA rules establishing the method for adjusting those benefits should have been subject to notice-and-comment and to publication under the Administrative Procedure and Freedom of Information Acts. The district court approved the Appeals Council ruling, and we affirm.

\* \* \*

Allen Sheppard applied for Supplemental Security Income ("SSI") and Social Security Disability Benefits in September 1981 and June 1982 respectively. These claims were denied at an initial level within the Social Security Administration both on first filing and on reconsideration. See Joint Appendix ("J.A.") 16 (decision of Appeals Council Nov. 18, 1986). Sheppard successfully appealed the determination to an ALJ, who found him entitled retroactively to both types of payment. See *id.;* see generally Charles H. Koch, Jr., & David A. Koplow,

*The Fourth Bite at the Apple: A Study of the Operation and Utility of the Social Security Administration's Appeals Council,* 17 Fla.State U.L.Rev. 199, 218–24 (1990) (describing claims process), reprinted from 1987 Admin.Conf. U.S. 629. The agency paid out almost $10,000 in SSI (through the District of Columbia's Department of Human Services, which deducted the amount of interim assistance it had extended Sheppard during the pendency of his federal claim), notifying Sheppard in the meantime that when his disability benefits were paid they would be offset by the SSI payments. The offset cut Sheppard's retroactive disability benefit from more than $8000 to less than a hundred. He sought reconsideration of the reduction at the claims level but lost.

Sheppard again appealed to an ALJ, who again reversed, in January 1986, restoring the disability benefits to the unadjusted full amount. (So far as we can discern from the record, however, the larger amount was not paid.) In July the Appeals Council notified Sheppard of its decision to reopen the case for "good cause" under 20 CFR § 404.988(b) (1989), because the ALJ's ruling was "erroneous on the face of the evidence"; and in November it formally reinstated the original determination to award only the reduced disability benefit. Sheppard took his case to district court, which upheld the reduction in benefits, see Memorandum and Order, No. 87–303 (D.D.C. June 16, 1989), and this appeal followed.

### I

▮ Sheppard first challenges the Appeals Council's authority, under SSA regulations, to reopen the ALJ's favorable ruling. He reads the regulations as providing for reopening only at the initiative of a claimant, arguing that SSA's laxer interpretation would swallow parallel provisions providing for Appeals Council *"review"* of ALJ rulings within a mere 60 days—as opposed to the four-year limit on *reopening* for "good cause" under § 404.988(b). Sheppard also asserts that the Appeals Council failed to meet the "good cause" threshold to which it held itself.

Inartful as the regulations may be, SSA's interpretation of them is defensible. SSA regulations speak mostly to the claimants and thus are sprinkled throughout the "you" (signifying beneficiaries) and "we" (signifying the SSA). See 20 CFR § 404.901 (1989) (definitions of "we" and "you"). This style is apparently grounded in a belief that if regulations sound folksy they will be "clearer and easier for the public to use." 45 Fed.Reg. 52,078 (1980) (stating purpose of revised SSA regulations); see also Note, *Untangling "Operation Common Sense": Reopening and Review of Social Security Administration Disability Claims,* 87 Mich.L.Rev.1946, 1946 (1989). Introducing the procedure for reopening and revision, § 404.987(b) tells the reader that "[y]ou may ask that a determination or a decision to which you were a party be revised." Nowhere in these provisions is the would-be beneficiary explicitly warned that the SSA may reopen on its own initiative.

But neither do the regulations exclude the possibility, and we think a fair reading allows it. Section 404.987(b) continues: "The conditions under which *we* will reopen a previous determination or decision are explained [below]." (Emphasis added.) Of course that could refer only to openings at the behest of a claimant, but it need not be so restricted. More significant is the inclusion of various conditions for reopening which in a great proportion of cases only the SSA would invoke. Determinations may be reopened at any time on a finding (among others) that the claimant committed fraud, that he was convicted of a crime bearing on the determination to be reopened, or that he murdered the person whose death payments the claimant stands to collect. See § 404.988(c). Sheppard argues that would-be beneficiaries might invoke these theories in order to increase their share of payments granted wholly or largely to others. This evidently is possible, but it seems implausible as the *exclusive* purpose of the provisions, with the counterintuitive effect of barring the SSA from revoking on its own, in the interest of

the public fisc, payments made to defrauders, murderers and other criminals. See *Munsinger v. Schweiker*, 709 F.2d 1212, 1215 (8th Cir.1983). Besides, the SSA explained at the time that its 1980 redraft of regulations was not intended to substantively alter preexisting provisions, see 45 Fed.Reg. 52,078 (1980), which expressly provided for reopening at the SSA's bidding. 20 CFR § 404.956(b) (1961).

Sheppard argues that if the reopening regulations, which permit reopening "for any reason" within 12 months of an initial determination, see § 404.988(a), apply to both sides, then the 60–day limit on seeking "review," see 20 CFR §§ 404.968 & 404.969 (1989), is superfluous. Sheppard spots a violation of the canon requiring a distinct meaning for every provision of a regulatory structure. See *Chrupcala v. Heckler*, 829 F.2d 1269, 1272–73 (3rd Cir.1987); *McCuin v. Secretary of HHS*, 817 F.2d 161, 168 (1st Cir.1987); *Butterworth v. Bowen*, 796 F.2d 1379, 1388–89 (11th Cir. 1986).

Quite apart from the canon's heroic assumptions about the systematic and encyclopedic rationality of agencies, cf. *Fort Stewart Schools v. FLRA*, — U.S. —, ——, 110 S.Ct. 2043, 2045, 109 L.Ed.2d 659 (1990) (noting contrary assumption of *ex abundanti cautela*), the argument overlooks facts that give independent life to the time limits on review. They run, for an ALJ decision, from the date of that decision. The limits for reopening, by contrast, run from the date of an "initial determination" by the SSA. In some instances the 12–month limit on reopening for any reason may have expired before the ALJ's ruling, in which case the Appeals Council's only fully discretionary power to change an outcome will be through "review," see *Cieutat v. Bowen*, 824 F.2d 348, 355–56 (5th Cir.1987), with the back-up of power to reopen within four years under § 404.988(b) limited to instances of "good cause."

■ Sheppard responds that under the SSA's reading of "good cause" this is no limit at all.[1] But two of the "good cause" provisions are plainly narrow, relating to new and material evidence and to clerical computation errors. 20 CFR § 404.989(a)(1) & (2). The third allows reopening where "[t]he evidence that was considered in making the ... decision clearly shows on its face that an error was made". § 404.989(a)(3). While we accept the SSA view that this encompasses clear errors of law, see *Fox v. Bowen*, 835 F.2d 1159, 1163–64 (6th Cir.1987), we do not read it as all-encompassing. Section 404.989(b), for instance, explicitly precludes reopening on the ground of an intervening change in legal interpretation. And while "clear" is itself one of the least clear terms in the language (perhaps most commonly a flag for the absence of any convincing argument), we take it to work some real limitation. See *George by George v. Schweiker*, 563 F.Supp. 888, 890 (D.Minn.1982). In practice, it appears that review is routine, reopening rare. See *Cieutat*, 824 F.2d at 355 n. 9.

■ Finally we have a due process attack, which the First Circuit invoked as a basis for reading the regulations to preclude reopening on the Appeals Council's initiative. See *McCuin*, 817 F.2d at 171–75; see also *Chrupcala*, 829 F.2d at 1273–74. *McCuin* reasoned that the "good cause" reopening power denied claimants an entitlement to finality in administrative decisions and did not supply fair notice. We are not convinced.

As to finality, the First Circuit seemed to move directly from citation of cases *applying* precepts of res judicata in administrative proceedings, *University of Tennessee v. Elliott*, 478 U.S. 788, 797–98, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966), to the assumption that the precepts were constitutionally mandated. Assuming that some

**1.** The Appeals Council found that the "initial determination" for reopening purposes came with the decision (in 1985) on how Sheppard's benefits would be computed once eligibility was established, J.A. 18, a finding petitioner does not challenge.

incursions on finality offend constitutional limits, this is not one. First, reopening by the Appeals Council seems to us properly viewed simply as a late stage in a single proceeding. Although there is the oddity that the Council itself is both adjudicator and advocate, which evidently led the First Circuit to reject the single-proceeding vision, *McCuin,* 817 F.2d at 172, that hardly seems dispositive; it is simply an aspect of the SSA's nonadversarial dispute resolution system, exemplified by the ALJ's duty to develop the record both for and against an applicant, see *Simms v. Sullivan,* 877 F.2d 1047, 1050 (D.C.Cir.1989). Second, the problem seems primarily one of timing and degree. It seems doubtful that the First Circuit would have been concerned by a six-month window, and we surely would be troubled by one of 50 years. Although four years is a long time for a claimant to have a benefit payment hang in limbo[2] (particularly a social security claimant, who will often lack any financial cushion), it is not so different from the insecurity faced by the average litigant, even if we confine the comparison to the period between trial court judgment and disposition on appeal.

As to notice, we are a little mystified as to why it is "impossib[le]" for the SSA to give fair notice of reopening to claimants. See 817 F.2d at 172. *McCuin* suggests that "[n]o other tribunal would be permitted to announce to a party that it has made a decision but that it reserves the right to change its mind for a period of four years." *Id.* at 173. But if notice is given, it hardly negates *notice as such* to assert that the procedure noticed is unfair; the unfairness must be independent, and we have addressed that above. Here we think that the notice the SSA actually sends out in the wake of a favorable ALJ decision is enough to alert claimants to the possibility of revision. "After the 60–day [review] period," read the notice to Sheppard of the January 1986 ruling restoring his disability payment, "the Appeals Council generally may reopen and revise the decision ... where there is an error as to the decision on the face of the evidence on which it is based." J.A. 20. Although the form letter itself makes no express mention of *any* time limit for good cause reopening, it does refer to the regulation (§ 404.988) in which the four-year window is set out. The SSA might do better to inform claimants of this outright, but its failure to do so does not make for a constitutional violation.

Finding the agency's interpretation of its reopening authority not "plainly inconsistent with the wording of the regulations," *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977), and finding no violation of due process, we uphold the SSA's view. We are at the same time startled that the agency has not, in the wake of almost a decade of litigation, simply revised the relevant language so as to make its power clear. Changes have apparently been in the works since at least 1987. See *Fox,* 835 F.2d at 1163; see also Note, 87 Mich.L.Rev. at 1971 n. 142. Doubtless the other courts on which this unnecessary sort of litigation may be inflicted would appreciate the SSA's moving it along.

## II

■ In the face of six circuit court decisions to the contrary, Sheppard attacks the Appeals Council's decision to require that retroactive SSI payments offset concur-

---

**2.** Of course as noted the four-year limit runs from the date of initial determination, not the date of the ALJ's decision. In cases considering challenges to own-motion reopening, the notification of intention to reopen has invariably followed, as in Sheppard's, within a matter of months from the date of the ALJ's ruling. See *Fox v. Bowen,* 835 F.2d 1159, 1160–61 (6th Cir. 1987) (six months); *McCuin v. Secretary of HHS,* 817 F.2d 161, 163 (1st Cir.1987) (eight months); *Butterworth v. Bowen,* 796 F.2d 1379, 1382 (11th Cir.1986) (six months); *Munsinger v. Schweiker,* 709 F.2d 1212, 1214 (8th Cir.1983) (six months); *Higginbotham v. Heckler,* 767 F.2d 408, 410 (8th Cir.1985) (four months); *Reddington v. Bowen,* 640 F.Supp. 1005, 1006 (E.D.N.C. 1986) (six months); *Silvis v. Heckler,* 578 F.Supp. 1401, 1402 (W.D.Pa.1984) (three months); *George by George v. Schweiker,* 563 F.Supp. 888, 889 (D.Minn.1982) (five months). The only case we have located in which the interval exceeded a year involved new evidence bearing on and discovered subsequent to an ALJ ruling. *Cieutat v. Bowen,* 824 F.2d 348, 351 (5th Cir.1987).

rently awarded disability benefits. See *Guadamuz v. Bowen*, 859 F.2d 762 (9th Cir.1988); *White v. Bowen*, 835 F.2d 974 (2d Cir.1987); *McKenzie v. Bowen*, 787 F.2d 1216, 1219–20 (8th Cir.1986); *Detson v. Schweiker*, 788 F.2d 372 (6th Cir.1986); *Wheeler v. Heckler*, 787 F.2d 101 (3rd Cir. 1986); *Cuthbert v. Secretary of Health and Human Services*, 784 F.2d 1157 (4th Cir.1985) (all approving SSA's approach).

When both types of income are paid as due, disability benefits reduce the amount of SSI. See 42 U.S.C. § 1382(c) (1988); 20 CFR §§ 416.1121(a) & 416.420 (1989); *Gallo v. Heckler*, 600 F.Supp. 1513, 1514–15 (E.D.N.Y.1985). When disability benefits are awarded on a retroactive basis, SSI paid as due similarly reduces the amount of disability. See 42 U.S.C. § 1320a–6 (1982), *amended by* Pub.L.No. 98–369, 98 Stat. 1132 (1984). Finally, under current law, when both SSI and disability benefits are awarded retroactively the former count against the latter. See 42 U.S.C. § 1320a–6 (Supp. V 1987). The issue here is whether this last method of calculation was permissible under legislation in effect for the period during which benefits were payable to Sheppard. 42 U.S.C. § 1320a–6 (1982).

We think it was. The statutory language by itself may not have required the offset; the old § 1320a–6 mandated reduction in retroactive disability benefits where the applicant "was an individual with respect to whom [SSI] benefits were paid ... for one or more months" overlapping the months for which disability benefits were sought. Sheppard argues that this offset requirement applied only when SSI benefits were paid as due. We assume that to be true for the explicit language, but that by no means suggests that offset is *inappro*-

priate when the agency makes the retroactive eligibility determination for both at the same time. The SSA's approach, moreover, advances the express congressional purpose to prevent windfalls to retroactive beneficiaries. See *McKenzie*, 787 F.2d at 1219–20 (quoting S.Rep.No. 408, 98th Cong., 2d Sess. 78 (1980)), U.S.Code Cong. & Admin.News 1980, pp. 1277, 1356; see also *White*, 835 F.2d at 977 n. 2; *Wheeler*, 787 F.2d at 105–06. Indeed, even in the face of the statutory ambiguity and our resulting necessary deference, *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), we would not likely uphold a contrary reading on the agency's part. Sheppard has not suggested nor can we imagine any reason why Congress would want him to receive the windfall he seeks. In the absence of any such reason, petitioner's view would seem unable to pass the *Chevron* test of reasonableness. See *Cuthbert*, 784 F.2d at 1160 (reading other than SSA's "would make no sense").[3]

 This last conclusion dooms Sheppard's final challenge: that SSA unlawfully failed to subject its calculation method—detailed in its "Program Operations Manual System"—to the notice and comment requirements of rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553 (1988). Although § 553 explicitly exempts matters relating to "grants, benefits or contracts," see § 553(a)(2), the Department of Health and Human Services has waived the exemption, see 36 Fed.Reg. 13,804 (1971). See Koch & Koplow, *Fourth Bite at the Apple*, 17 Fla.State U.L.Rev. at 233 n. 187; cf. *Alcaraz v. Block*, 746 F.2d 593, 612 (9th Cir.1984) (noting possible significance of agency's voluntary adoption of

---

**3.** Sheppard also challenges SSA's adjustment method as an alienation of disability benefits in violation of 42 U.S.C. § 407 (1988), insofar as his disability payment was offset by a SSI payment from which the D.C. government deducted the amount of interim assistance extended Sheppard. See *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (finding remittance of social security benefits to state governments barred by § 407). But it was only SSI, not disability, monies which made their way into the hand of the government-cred-

itor, a permissible remittance under 42 U.S.C. § 1383(g). See *McKenzie*, 787 F.2d at 1221–22; *Wheeler v. Heckler*, 787 F.2d 101, 106 n. 6 (3rd Cir.1986); *Lindsay v. Secretary of HHS*, 612 F.Supp. 366 (D.N.J.1985). SSA was thus justified in first calculating SSI benefits and then adjusting the disability payment as a way of avoiding either a violation of § 407 or a windfall to plaintiff, at the same time compensating the state government for its tender of interim assistance. See generally *Gallo v. Heckler*, 600 F.Supp. 1513 (E.D.N.Y.1985).

APA requirements). We first note that the Appeals Council decision in no way rests on the Manual. Far from appearing bound by the Manual's discussion, the Appeals Council made no citation to it whatever, see J.A. 13–19, see also J.A. 75–77 (notice of reopening), and apparently felt free (or obligated) to decide the question on its own. Sheppard thus had a shot at persuading them otherwise, a more than adequate substitute for APA comment. The case for affirmance is much stronger here than in *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969), where the plurality upheld an agency order despite the agency's reliance on a defectively adopted rule, on the ground that the order itself arose from a valid adjudication; here the order, though congruent with the disputed rule, stands on its own.

In any event, as we believe the agency's approach to have been the only reasonable one, Sheppard could not have been harmed by the absence of public participation. Aside from the point that disregard of the congressional resolution against windfalls would tend to help a very poor class of beneficiaries, see Brief for Appellant 40, there appear to have been no grounds on which to question the agency's refusal to do so. The absence of any real argument, coupled with the logically related likelihood that we would reverse the SSA if it came out the other way, makes the absence of prejudice plain enough to find harmless any SSA error in not providing notice and comment. See *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1324 (D.C. Cir.1988). Similarly, Sheppard has not even suggested how he might have suffered any injury from SSA's failure to publish the operative provision of its Manual in the Federal Register, as required by the Freedom of Information Act, 5 U.S.C. § 552(a)(1)(D) (1988), for both substantive rules and "interpretations of general applicability."

The judgment of the district court is

*Affirmed.*