Louis GERSTEIN, Plaintiff,

v.

Dr. Otis BOWEN, Secretary of the Department of Health and Human Services, Defendant.

No. 87 C 4111.

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1988.

Order on Secretarys Motion Feb. 23, 1988.

William H. Gifford, Jr., Shefsky, Saitlin & Froelich, Ltd., Chicago, Ill., for plaintiff.

James J. Kubik, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

There are two issues raised in this appeal from a final determination of the Secretary of the Department of Health and Human Services: (1) whether the Appeals Council may, pursuant to 20 C.F.R. § 404.988(b), reopen an Administrative Law Judge's decision in favor of a claimant after the sixty-day period for review has passed; and (2) whether there is substantial evidence to support the Secretary's determination that the claimant, Louis Gerstein, was not retired at any time until he reached the age of seventy, and thus not eligible for retirement insurance benefits.

### Procedural History

Louis Gerstein ("Gerstein") was born April 28, 1915. On January 28, 1980, just prior to his sixty-fifth birthday, Gerstein applied for retirement insurance benefits. He stated on the form that he was working for a corporation called 53rd St. Mr. G, Inc. ("53rd St."). Gerstein requested benefits beginning with the earliest possible month provided there would be no permanent reduction in his ongoing monthly benefit. This simple application put in motion what can only by characterized as a procedural nightmare.

On April 28, 1982, the Secretary informed Gerstein he was not entitled to retirement insurance benefits because he was not retired. In a letter addressed to "Louise Gerstein," the Secretary stated:

> You have not satisfactorily proven that your 1982 estimate of the amount of salary you will earn (not receive) in 1982. Because you are in a position to control your reported salary, and appear to maintain control of the corporation you still own, your 1982 estimate has been determined to be $50,000 (one-half the amount reported when you owed [sic] two corporations). This determination will prevent payment of any social security benefits in 1982.

(R. 170).

On September 10, 1982, Gerstein filed a formal request for reconsideration (R. 162). The next day, Gerstein met with a social security representative named Daily (R. 179–181). Ms. Daily wrote a report in which she believed Gerstein had demonstrated good cause for his failure to request reconsideration within sixty days. Ms. Daily went on to recommend that Gerstein was in fact retired and should be considered eligible for benefits.

On November 5, 1982, the Secretary rejected Ms. Daily's recommendation, and informed Gerstein that there was no good cause for reopening the adverse decision issued in April 1982 (R. 168). Nevertheless, sometime in 1982, Gerstein began receiving retirement insurance benefits.[1]

On March 28, 1984, the Secretary notified Gerstein that his benefit payments had been stopped effective April 1980 (R. 159–161). The Secretary determined that Gerstein was not retired because he was receiving remuneration for services in an amount greater than that allowed by law. The Secretary demanded reimbursement of $19,116.80 of "overpayments."

Gerstein requested a hearing before an Administrative Law Judge (R. 268), and such a hearing was held before Administrative Law Judge William Sheridan ("ALJ Sheridan") on April 16, 1985 (R. 49–94). After examining the record and hearing testimony, on June 21, 1985, ALJ Sheridan concluded that Gerstein was in fact retired and had been since January 1981. ALJ Sheridan found Gerstein therefore was eligible for retirement benefits beginning in January 1981 (R. 394–398).

On September 5, 1985, Burton Blanchard, the Chief of the Reconsideration Review

---

1. Both parties state in their briefs that Gerstein began receiving retirement benefits sometime around 1982. There is no evidence in the record indicating when the Secretary began paying Gerstein benefits. However, when the Sec-retary stopped paying benefits to Gerstein in 1984, he requested reimbursement of "overpayments" made in March 1982 and June 1982 through February 1984 (R. 159–61).

Section, Great Lakes Region, wrote to the Director of the Office of Appeals Operations requesting that the decision of ALJ Sheridan be reviewed (R. 402–403). Blanchard disagreed with the ALJ's finding that Gerstein should receive benefits for 1981 and 1982. Gerstein's attorney objected to the review on the ground that the sixty-day period for review set forth in 20 C.F.R. § 404.969 had elapsed (R. 404–05). The Appeals Council apparently agreed that the time for review has passed, and on January 8, 1986, (some 22 months after the March 1984 determination) the Appeals Council decided instead to reopen ALJ Sheridan's decision under 20 C.F.R. § 404.988 (R. 430–32). The Appeals Council found that the evidence considered in the ALJ's decision clearly showed on its face that an error was made. The Appeals Council concluded that Gerstein was working at least through February 1982 (R. 431). The Appeals Council determined that ALJ Sheridan had not sufficiently addressed whether Gerstein was retired in 1982, 1983, and 1984. Therefore, the Council vacated ALJ Sheridan's decision and remanded the case to an ALJ for further proceedings.

A second hearing was held on July 7, 1986, before ALJ Gilbert Drucker (R. 95–154). ALJ Drucker considered the evidence before him, including Gerstein's testimony, and on October 15, 1986, concluded that Gerstein was not retired at any time until he turned seventy on April 28, 1985 (R. 27–42). ALJ Drucker found Gerstein ineligible for retirement benefits at any time until he reached the age of seventy.

Gerstein requested a review of ALJ Drucker's adverse determination (R. 6–12). This request was denied (R. 3–5), thus finalizing the Secretary's determination. Gerstein appealed to this court, raising two substantial questions of law. We first consider whether the Appeals Council had jurisdiction to reopen Gerstein's case in January 1986. Then we determine whether there was substantial evidence to support ALJ Drucker's finding that Gerstein was not retired.

## I. APPEALS COUNCIL'S AUTHORITY TO REOPEN

### A. *Applicable Regulations*

The Secretary's regulations differentiate between "reviewing" a decision of an ALJ and "reopening" such a decision. The regulations governing Appeals Council review of a decision are found at 20 C.F.R. §§ 404.969–404.983 (hereafter, unless otherwise stated all regulations cited are found in 20 C.F.R.). The regulations governing reopening of an ALJ's determination are found at § 404.987–404.996. The pertinent regulations are reproduced below.

"§ 404.967. Appeals Council Review—general

"If you or any other party is dissatisfied with the hearing decision or with the dismissal of a hearing request, you may request that the Appeals Council review that action. The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge. The Appeals Council shall notify the parties at their last known address of the action it takes.

"§ 404.968. How to request Appeals Council review

"(a) Time and place to request Appeals Council review. You may request Appeals Council review by filing a written request. Any documents or other evidence you wish to have considered by the Appeals Council should be submitted with your request for review. You may file your request—

"(1) Within 60 days after the date you receive notice of the hearing decision or dismissal (or within the extended time period if we extend the time as provided in paragraph (b) of this section;

"§ 404.969. Appeals Council initiates review

"Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing

decision or dismissal, notice of the action will be mailed to all parties at their last known address.

"§ 404.970.  Cases the Appeals Council will review

"(a) The Appeals Council will review a case if—

"(1) There appears to be an abuse of discretion by the administrative law judge;

"(2) There is an error or law;

"(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence;  or

"(4) There is a broad policy or procedural issue that may affect the general public interest.

"(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

"§ 404.987.  Reopening and revising determinations and decisions

"(a) General.  Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review.  However, a determination or a decision made in your case may be reopened and revised.  After we reopen your case, we may review the earlier determination or decision.

"(b) Procedure for reopening and revision.  You may ask that a determination or a decision to which you were a party be revised.  The conditions under which we will reopen a previous determination or decision are explained in § 404.988.

"§ 404.988.  Conditions for reopening

"A determination, revised determination, decision, or revised decision may be reopened—

"(a) Within 12 months of the date of the notice of the initial determination, for any reason;

"(b) Within four years of the date of the initial determination, if we find good cause, as defined in § 404.989, to reopen the case;

"(c) At any time if—

"(1) It was obtained by fraud or similar fault;

"(2) Another person files a claim on the same earnings record and allowance of the claim adversely affects your claim;

"(3) A person previously determined to be dead, and on whose earnings record your entitlement is based, is later found to be alive;

"(4) Your claim was denied because you did not prove that the insured person died, and the death is later established—

"(i) By reason of an unexplained absence from his or her residence for a period of 7 years;  or

"(ii) By location or identification of his or her body;

"(5) The Railroad Retirement Board has awarded duplicate benefits on the same earnings record;

"(6) It either—

"(i) Denies the person on whose earnings record your claim is based gratuitous wage credits for military or naval service because another Federal agency (other than the Veterans Administration) has erroneously certified that it has awarded benefits based on the service;  or

"(ii) Credits the earnings record of the person on which your claim is based with gratuitous wage credits and another Federal agency (other than the Veterans Administration) certifies that it has awarded a benefit based on the period of service for which the wage credits were granted;

"(7) It finds that the claimant did not have insured status, but earnings were later credited to his or her earnings record to correct errors apparent on the face of the earnings record (section 205(c)(5)(C) of the Act), to enter items transferred by the Railroad Retirement Board, which were credited under the Railroad Retirement Act when they should have been credited to the claimant's Social Security earnings record

(section 205(c)(5)(D) of the Act), or to correct errors made in the allocation of wages or self-employment income to individuals or periods (section 205(c)(5)(G) of the Act), which would have given him or her insured status at the time of the determination or decision if the earnings had been credited to his or her earnings record at that time, and the evidence of these earnings was in our possession or the possession of the Railroad Retirement Board at the time of the determination or decision.

"(8) It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made;

"(9) It finds that you are entitled to monthly benefits or to a lump sum death payment based on the earnings of a deceased person, and it is later established that: (i) You were convicted of a felony or an act in the nature of a felony for intentionally causing that person's death; or (ii) if you were subject to the juvenile justice system, you were found by a court of competent jurisdiction to have intentionally caused that person's death by committing an act which, if committed by an adult, would have been considered a felony or an act in the nature of a felony;

"(10) It either—

"(i) Denies the person on whose earnings record your claim is based deemed wages for internment during World War II because of an erroneous finding that a benefit based upon the internment has been determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or

"(ii) Awards the person on whose earnings record your claim is based deemed wages for internment during World War II and a benefit based upon the internment is determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or

"(11) It is incorrect because—

"(i) You were convicted of a crime that affected your right to receive benefits or your entitlement to a period of disability; or

"(ii) Your conviction of a crime that affected your right to receive benefits or your entitlement to a period of disability is overturned.

"§ 404.989.  Good cause for reopening

"(a) We will find that there is good cause to reopen a determination or decision if—

"(1) New and material evidence is furnished;

"(2) A clerical error in the computation or recomputation of benefits was made; or

"(3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

"(b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made.

## B. *The Parties' Arguments*

Gerstein argues that "review" is the only procedure under which the Secretary may change a decision favorable to a claimant. Gerstein contends that the procedures for "reopening" a case are available only to a claimant. Gerstein urges us to find that the sixty-day period for review had passed when the Appeals Council remanded his case to an ALJ in January 1986 and when Blanchard wrote to the Appeals Council requesting review in September 1985. If the Appeals Council had no authority to reopen Gerstein's case, then its order remanding the case is of no effect and ALJ Sheridan's decision favorable to Gerstein should stand as the Secretary's final determination.

The Secretary interprets the regulations to allow the Appeals Council to reopen cases *sua sponte* in the same manner and under the same conditions as claimants. The Secretary argues that the regulations concerning reopening do not explicitly pro-

hibit the Appeals Council from reopening and that we should defer to his interpretation of his regulations.

### C. Prior Decisions

Several district and appellate courts have examined the very problem we face here. Unfortunately, the courts have taken widely divergent, utterly irreconcilable views. The first reported appellate decision [2] determining whether the Secretary may utilize the reopening provisions in §§ 404.-987–.996 was *Munsinger v. Schweiker*, 709 F.2d 1212 (8th Cir.1983). *Munsinger* held that the procedures set forth in § 404.987 are not limited to claimants.

> Section 404.987 does not expressly preclude reopening initiated by the administration, nor does it contain language that inescapably leads to that conclusion. Indeed, section 404.988 contains several conditions upon which a determination can be reopened which one would expect to be raised by the Secretary and not the claimant. *See, e.g.* 20 C.F.R. § 404.988(c)(1) (1981) (fraud or other fault). Accordingly we conclude that sections 404.987–.995 permit the appeals council to reopen *sua sponte* a prior final decision within the circumstances outlined in 20 C.F.R. § 404.988.

709 F.2d at 1215.

The result in *Munsinger* was adopted in *Fox v. Bowen*, 835 F.2d 1159 (6th Cir.1987); *Higginbotham v. Heckler*, 767 F.2d 408, 410 (8th Cir.1985); *Zimmermann v. Heckler*, 774 F.2d 615 (4th Cir.1985); *Wilson v. Heckler*, 617 F.Supp. 899 (D.Mont.1985); and *Reddington v. Bowen*, 640 F.Supp. 1005 (E.D.N.C.1986); among others.

The first reported decision holding that the Secretary may not initiate reopening was *Silvis v. Heckler*, 578 F.Supp. 1401 (W.D.Pa.1984). In *Silvis*, the court interpreted the language in § 404.987(a) ("After we reopen your case, we may revise the earlier determination or decision") and § 404.987(b) ("The conditions under which we will reopen a previous determination or decision are explained in § 404.988") as not dealing with the question of *who* may seek to reopen a decision; "rather, they deal with the Secretary's discretion to grant or deny a claimant's request that his decision be reopened." 578 F.Supp. at 1404. The *Silvis* court also relied on the overall regulatory scheme to support its conclusion. The court noted that there are two relevant provisions in the regulations providing for review: § 404.968 governs a claimant's right to seek review; § 404.969 governs the Secretary's right to seek review. By contrast, the reopening regulations contain only one provision—§ 404.987—and the wording of that section more closely parallels the wording of § 404.968 than § 404.969. 578 F.Supp. at 1404. The court dismissed the Secretary's argument that its decision left her without the power to review erroneous decisions. The court stated that after the time for review had elapsed, the Secretary could still institute proceedings to terminate benefits. *Id.*

Each of the two polar positions has gained support within the past year with the release of forceful decisions which seem destined to become the leading decisions for their respective positions. *Compare McCuin v. Secretary of Health and Human Services*, 817 F.2d 161 (1st Cir. 1987) *with Cieutat v. Bowen*, 824 F.2d 348 (5th Cir.1987). In *McCuin*, the court reviewed four possible interpretations of the reopening regulations, each of which had gathered judicial adherents: (1) only claimants may initiate reopening (*Silvis*); (2) the Appeals Council may reopen on its own accord (*Munsinger*); (3) the Social Security Administration could indeed employ the regulations in §§ 404.987–.996 but only that component of the Administration which had made the decision or which had

---

**2.** In 1980, the Secretary recodified the regulations governing the review and reopening procedures. 45 Fed.Reg. 52078 (1980). Prior to the recodification, the language of the regulations unmistakably provided that the Appeals Council could reopen and revise a decision of a hearing examiner *sua sponte*. *See* 20 C.F.R. § 404.956(b) (1960); 25 Fed.Reg. 1677, 1683 (1960). The 1980 recodification dropped any specific reference to the Appeal Council's right to initiate reopening. However, the Secretary argues that no substantive changes were made by the recodification.

the decision properly before it for review could initiate reopening (*Butterworth v. Bowen,* 796 F.2d 1379 (11th Cir.1986)); and (4) the Appeals Council could initiate reopening, but only for errors of fact—errors of law would be subject to the sixty-day time limit for review (*Fox v. Heckler,* No. C83–41974, Unempl.Ins.Rep. (CCH), ¶ 16,958 (N.D. Ohio, March 5, 1986), *rev'd sub. nom. Fox v. Bowen,* 835 F.2d 1159 (6th Cir.1987)).

The *McCuin* court found flaws with the *Silvis* approach because some of the conditions for reopening listed in § 404.988(c) realistically would be invoked only by the Secretary. *E.g.,* § 404.988(c)(1) (fraud or similar fault), (c)(3) (person previously thought dead found alive), and (c)(9) (claimant convicted of killing the person on whose earnings record the claim for benefits is established). *McCuin* rejected the *Munsinger* approach because it believed that allowing the Secretary to invoke the provisions authorizing reopening "for any reason" within one year (§ 404.988(a)) and reopening "for good cause" within four years (§ 404.988(b)), would effectively render the sixty-day time limit for review meaningless. The *McCuin* court also rejected the *Butterworth* approach, while deeming it "ingenious," as relying on many detailed distinctions of which the regulations make no mention. Finally, the *McCuin* court rejected the *Fox* approach because it left open the ability of the Appeals Council to circumvent the sixty-day review limit by employing the one-year "any reason" reopening. In sum, the *McCuin* court found "there is *no* reading which would not stretch the language of the regulations to a considerable extent." 817 F.2d at 171 (emphasis in original).

The *McCuin* court decided to adopt an interpretation best comporting with the requirements of due process. *McCuin* found persuasive the argument that allowing the Secretary to reopen a case anytime within four years simply upon a showing of good cause removes the finality that administrative adjudication normally imparts. The *McCuin* court felt that the lack of finality made it impossible for the Secretary to formulate an adequate notice to claimants.

The court believed that any decision, ostensibly favorable to a claimant, would have to carry the caveat that "[t]he Appeals Council reserves the right to reopen your case within a year for any reason and within four years for good cause.... You should be aware that if we discover that we made [an error of fact or law in processing your claim], the benefits we grant you today will be taken away from you at that time." 817 F.2d at 173. *McCuin* concluded that, to avoid serious substantive and procedural due process problems, the regulations "should be interpreted as allowing reopening only on the basis of motions by claimants." 817 F.2d at 174. The *McCuin* court thought this reading avoided placing claimants in limbo for four years, and best effectuated the congressional intent to apply the Social Security Act liberally in favor of beneficiaries. The court rejected the Secretary's predictions of large-scale overpayments to ineligible claimants because the normal channels of appeal (determination, reconsideration, ALJ hearing, Appeals Council review) were usually sufficient to detect and correct any errors that may have occurred, and also because the Secretary may employ other procedures to terminate payment of benefits in the event circumstances change or to terminate benefits and recover overpayments in the event the claimant was at fault in receiving improper benefits. *See* 20 C.F.R. §§ 404.415, 404.-501–515, 404.1595. 817 F.2d at 174.

By contrast, in *Cieutat* the Fifth Circuit held that the Appeals Council may reopen cases on its own initiative under § 404.988. The *Cieutat* court saw the key question to be whether the Secretary's interpretation of his own regulations was plainly inconsistent with the language of the regulations or whether the interpretation was wholly unreasonable. 824 F.2d at 356 n. 13. *Cieutat* found the Secretary's interpretation favoring the Appeals Council's authority to initiate reopening was not plainly inconsistent with the language of the regulations. 824 F.2d at 356. *Cieutat* criticized both *McCuin* and *Butterworth* for giving insufficient deference to the Secretary's interpretation of his regulations.

The *Cieutat* court rejected the argument, found forceful by *McCuin*, that allowing the Secretary to initiate reopening rendered the review procedure surplusage. Even though the regulations provide a longer time period for reopening (one year for any reason; four years for good cause) than for review (sixty days), *Cieutat* noted that the time periods for review and reopening do not begin running at the same time. The sixty-day period for review begins "after the date of a hearing decision or dismissal." Section 404.969. By contrast, a case may be reopened within one year or four years "of the date of the notice of the initial determination." Section 404.988(a), (b). The *Cieutat* court realized that this difference in starting dates means that it is possible, if not likely, that the time for "any reason" *reopening* would expire before the time for *review* had passed. 824 F.2d at 355 & n. 11. Therefore, *Cieutat* rejected the contention that allowing the Secretary to reopen cases would render the review procedure meaningless.

The Seventh Circuit has not yet ruled on the issue. In *DeLong v. Heckler*, 771 F.2d 266 (7th Cir.1985), the following *dictum* appears:

> [Section 404.987(a)] could be read to make the reopening of a disability case a remedy of the disappointed applicant.... The word "However" in [the regulation] is particularly suggestive that reopening is intended to be for the benefit of the disappointed applicant only—though of course we need not decide in this case whether it must be limited so.

771 F.2d at 268.

The only decision in this district on this issue is *Weinstein v. Bowen*, 666 F.Supp. 1131 (N.D.Ill.1987), in which Judge Leinenweber substantially followed *McCuin* in holding that only claimants may initiate reopening.

### D. *Discussion*

Initially, we must express our frustration at trying to interpret a set of regulations that lend themselves to no rational reading. We agree with *McCuin* that there is no interpretation of the regulations which is entirely satisfactory. On the one hand, if we follow *McCuin*, some conditions in § 404.988(c) are pointless. On the other, if we follow *Cieutat*, the potential evils of lack of finality and due process violations rear their ugly heads. If we try to engraft some external provision onto the regulations to achieve rationality, as the court did in *Butterworth*, we become guilty of interpreting the regulations not as they are written but as we would like them written. As we said, no interpretation is entirely satisfactory.

We begin by adopting as a ground rule the notion that we will not read the regulations so as to render any portion of them meaningless. This is the reason we reject the position taken by *McCuin*. If the Secretary cannot invoke the reopening procedures, then there is no one to enforce the provisions set forth in § 404.988(c)(1), for instance. Section 404.988(c)(1) says a determination or decision may be reopened at any time if it was obtained by fraud or similar fault. The "it" is the determination or decision. Realistically, only a claimant will obtain a determination or decision by fraud, and only the Secretary will seek to reopen and revise that fraudulently obtained determination or decision. Similarly, if a claimant is awarded survivor's benefits based on the earnings of a deceased individual, it is ridiculous to suggest that anyone but the Secretary would seek to reopen that award if later developments reveal the claimant murdered the wage earner. § 404.988(c)(9). We conclude the regulations clearly envision the Secretary or his Appeals Council will reopen determinations and decisions in at least some circumstances. Thus, we reject the absolute *McCuin* position.

The next problem is, if the Secretary can reopen cases in some circumstances, what is to prevent him from emasculating the review procedures set forth in § 404.967 *et seq.?* We think part of the answer is provided in *Cieutat*. The one-year "any reason" reopening provision in § 404.988(a) is not as powerful as claimants have argued. As the *Cieutat* court noted, the one-year

clock for "any reason" reopening begins ticking when the Social Security Administration makes its *initial* determination. By contrast, the sixty-day review clock begins when the ALJ issues his decision. Thus, when the initial determination is adverse to a claimant, the claimant is expected to pursue the normal appeals route: reconsideration and a hearing before an ALJ. If the claimant loses before the ALJ, he or she may then seek review before the Appeals Council within sixty days, or seek reopening "for any reason" if it still within one year of the initial determination. *See Cieutat*, 824 F.2d at 355 n. 11.

The same holds true for the Secretary. If an ALJ rules in favor of a claimant, the Secretary can only employ the "any reason" reopening procedure if the one-year time limit has not elapsed. It often takes more than one year for a claimant to seek reconsideration of an initial determination and pursue an appeal to a favorable resolution. In that event, the Secretary would have to employ the sixty-day review procedure or some other reopening provision because the time for "any reason" review would have elapsed. Because the two methods of appeal—review and reopening—have different triggering dates, the apparent ease with which the Secretary could evade the review process is largely illusory.

Subsection (b) of § 404.988 allows a case to be reopened at any time within four years "for good cause." This provision provides for a significantly longer time period than does the "any reason" reopening procedure. It is unlikely that the four-year "good cause" time period would elapse before the sixty-day review time period would elapse. Nevertheless, the four-year reopening procedure does not render the review procedure meaningless. Although the time period for reopening is longer than the time period for review, the grounds on which the Appeals Council will reopen a case are much narrower than the grounds on which the Appeals Council will review the case. The Appeals Council will review a case if the ALJ commits an abuse of discretion, if there is an error of law, if the ALJ's findings or conclusions are not sup-

ported by substantial evidence, or if there is a broad policy or procedural issue that may affect the general public interest. § 404.970(a). Moreover, the Appeals Council in its discretion may review a case on other unspecified grounds. *See Mullen v. Bowen*, 800 F.2d 535 (6th Cir.1986) (en banc). By contrast, the Appeals Council will *reopen* a case only if new and material evidence is furnished, if a clerical error in the computation of benefits was made, or if the evidence considered in making the determination or decision shows on its face that an error was made. § 404.989(a). Clearly, the grounds for reopening are much narrower than the grounds for review. Hence, the provision authorizing reopening for "good cause" within four years is not an adequate substitute for review within sixty days. We find that allowing the Secretary to employ the reopening procedures does not render the review procedures meaningless, so we interpret the regulations as allowing the Secretary to reopen cases *sua sponte*.

This conclusion still leaves us with the problem which troubled the *McCuin* court so much—a claimant's inability to spend benefits money received, knowing the money will not be taken away. We agree with *McCuin* that constitutional due process concerns are seriously implicated when the Secretary attempts to reopen a decision long since finalized and attempts to force a recipient of benefits to disgorge four or more years of past benefits. As *McCuin* says,

> Under [the Secretary's] interpretation, all decisions to grant benefits are only provisional, subject to the Council's *sua sponte* ability to reopen cases and withdraw benefits due to errors made in the determination. Such decisions do not actually grant benefits but, in effect, direct claimants to put the money in escrow for at least four years....

817 F.2d at 174.

*McCuin* solves this finality problem by refusing to allow the Secretary to reopen any cases whatsoever. We find this approach too extreme. Social security bene-

fits are continuing benefits. It is absurd to require the Secretary to continue paying benefits to an individual not entitled, or to continue paying benefits in a certain amount when that amount was erroneously calculated. The Secretary must be able to correct these errors. On the other hand, it is grossly unfair to require a claimant who needs to spend his benefits on the necessities of life to reimburse the Secretary four years or more of overpaid benefits.

Fortunately, there exists a procedure by which an individual who has been receiving benefits erroneously can receive a waiver from repaying overpayments. Section 204(b) of the Social Security Act, 42 U.S.C. § 404(b), requires that:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustments of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equty and good conscience.

The regulations implementing § 204(b) of the Act, 20 C.F.R. §§ 404.501–404.515, specify the circumstances in which recovery of overpayments is inappropriate. The regulations define the terms "fault" (§ 404.507), "defeat the purpose of this subchapter" (§ 404.508), and "against equity and good conscience" (§ 404.509). This safety valve measure, when employed judiciously, adequately safeguards a claimant's interest in finality. If a claimant has acted without fault and requiring overpayments would place the claimant in dire financial straits, then the claimant will not be required to refund the overpayments. A claimant who acts properly and needs the social security benefits for necessary expenses does not have to "put the money in escrow for at least four years." A claimant simply must avail him or herself of the waiver procedures. The existence of those procedures satisfies due process.

■ Accordingly, the Secretary had jurisdiction to reopen Gerstein's case to determine whether Gerstein was retired. The Secretary had good cause to reopen (pursuant to § 404.988(b)) because the evidence in the record indicates that ALJ Sheridan's opinion was clearly erroneous on its face. ALJ Sheridan found that Gerstein was retired beginning in January 1981. However, as we show *infra*, Gerstein received $100,000 in wages in 1981 and $28,500 in wages in 1982. Since Gerstein received substantial amounts of money as wages after January 1981, he could not have been retired beginning in January 1981. The evidence in the record (Gerstein's 1981 and 1982 tax returns) clearly indicates ALJ Sheridan's decision was erroneous on its face. Therefore, the Appeals Council properly reopened Gerstein's case under the authority of § 404.989(a)(3).

We now proceed to determine whether the Secretary's conclusion that Gerstein was not retired at any time until his seventieth birthday is supported by substantial evidence in the record.

## II. SUBSTANTIAL EVIDENCE

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The Social Security Act provides that every person who (1) is fully insured, (2) has attained the age of sixty-two, and (3) has filed an application, is entitled to old-age benefits. 42 U.S.C. § 402(a). However, in the case of any individual who earns wages in excess of a certain amount, the Secretary will deduct a portion of the amount of those excess earnings from the individual's benefits. 42 U.S.C. § 403(b). The Secretary will not deduct any amount from an individual's benefits if that individual rendered no services for wages in a given month. 42 U.S.C. § 403(f)(4)(B). "Retirement" is the common term for performing no services for wages. Hence, a determination that a person is "retired" is the equivalent of determining that that person is not receiving any wages for services and is entitled to the full amount of his or her old-age benefits. ALJ Drucker found that Gerstein was retired at no time until he reached his seventieth birthday. For

the following reasons, we conclude his determination was supported by substantial evidence and thus affirm his findings.

Gerstein and his brother Julius Gerstein ("Julius") each owned one-half the stock of two corporations which owned grocery stores—53rd St. Mr. G, Inc. ("53rd St.") and 29th St. Mr. G, Inc. ("29th St."). Gerstein was the president of both corporations; Julius was the secretary-treasurer. Gerstein managed the 53rd St. store and Julius managed the 29th St. store. In January 1981, Gerstein was diagnosed as having lung cancer. Gerstein underwent surgery and was unable to manage the 53rd St. store during 1981. Prior to his illness, Gerstein worked approximately seventy hours per week; after his illness, Gerstein worked no more than ten to fifteen hours

per week. During 1981, management of the 53rd St. store passed to Gerstein's nephew, William Gerstein, and to a longtime employee, Michael Damico.

In February 1982, Gerstein and Julius sold virtually all of their shares of 53rd St. stock to Junior G, Inc., a corporation created and owned by William Gerstein, Michael Damico, and William's sister, Susan Gerstein. Junior G took over complete operations of the 53rd St. store and Gerstein neither worked at the 53rd St. store nor received wages for services from 53rd St. again.

From 1980 through 1985, Gerstein reported income from the following sources:

### Table 1
### Louis Gerstein's Income

| Year | Wages from 53rd St. | Wages from 29th St. | "Dividends" from 29th St. | Total |
|------|------|------|------|------|
| 1980 | $40,000 | $41,500 | N/A [3] | $ 81,500 |
| 1981 | 50,000 | 50,000 | N/A | 100,000 |
| 1982 | 10,500 | 18,000 | $61,128 | 89,628 |
| 1983 | 0 | 2,000 | 57,254 | 59,254 |
| 1984 | 0 | 3,000 | 34,615 | 37,615 |
| 1985 | 0 | N/A | 49,977 | 49,977 |

The wages Gerstein reported receiving from 29th St. in 1983 through 1985 were not enough by themselves to force a reduction in Gerstein's benefits. The issue the ALJ had to decide was whether or not the "dividends" Gerstein reported were really wages in disguise. ALJ Drucker found that Gerstein was in a position, as president and co-owner of 29th St., to pay himself a small enough salary to remain eligible for full old-age benefits, yet also pay himself substantial dividends. The ALJ compared Gerstein's amount of work performed for 29th St. before his "retirement" with the amount of work he performed afterwards. Before 1982, Gerstein was president of 29th St. and worked only a few hours a month there. He had to be con-

sulted on major decisions, but had little input into the day-to-day operations of the 29th St. store. Gerstein had authority to purchase goods and services for the store, to sign checks, to hire and fire, but Gerstein rarely, if ever, exercised these powers. Nevertheless, Gerstein received $41,-500 in wages from 29th St. in 1980 and $50,000 in 1981.

After he "retired," Gerstein's job tasks at 29th St. changed little. He still had the authority to sign checks and to give advice. Gerstein still had to be consulted on major decisions and also worked ten to fifteen hours per month sorting coupons. However, Gerstein's salary from 29th St. decreased dramatically during the years 1982, 1983, and 1984 ($18,000, $2,000, and $3,000,

---

**3.** The record indicates that in 1980, Gerstein reported a total of $4,084 in dividends. However, the record does not indicate the source of those dividends. Similarly, the record indicates

that in 1981, Gerstein reported $10,687 in dividends. Again, however, the record does not indicate the source of those dividends.

respectively). At the same time his salary was decreasing, the amount of dividends Gerstein received from 29th St. dramatically increased.

The ALJ concluded that Gerstein tried to disguise wages as dividends or ordinary income. The ALJ deemed the dividends which Gerstein received were actually wages and reflected the true value of his services to the 29th St. corporation.

Gerstein does not take issue with the facts found by ALJ Drucker; he disagrees with the inferences the ALJ drew from those facts. Specifically, Gerstein argues that he was compensated by 29th St. in 1980 and 1981 for the services he provided to 53rd St. In other words, Gerstein's value to 29th St. in 1980 was effectively nil while his value to 53rd St. was over $80,-000. There are two responses to this argument. First of all, if Gerstein was worth much more to 53rd St. than 29th St., the former corporation should have paid him more than the latter. But it did not; both corporations paid Gerstein roughly the same amount (within a few thousand dollars) each year. It is altogether reasonable that Gerstein was paid $40,000 by each corporation in 1980 and $50,000 by each corporation in 1981 simply for the value of his services *as president.* Secondly, if Gerstein earned $50,000 from 29th St. as president in 1981, it is logical to infer that he should have earned sums of the same magnitude in 1982, 1983, 1984, and 1985. The fact that the money Gerstein received was in the form of dividends is irrelevant. The substance of the economic transactions governs, not the form.

We conclude there was substantial evidence to support ALJ Drucker's findings. We may or may not have made those same findings ourselves if we were deciding the case *de novo.* Since our role as a reviewing court is limited, we determine only whether the Secretary's decision was supported by substantial evidence. It was, so we affirm.

## CONCLUSION

Despite our affirmance of the Secretary's determination that Gerstein was not retired, we have not yet disposed of the whole case. We still have to determine whether Gerstein must refund the over-payments amounting to over $19,000 he erroneously received. The Secretary has not yet determined whether Gerstein is entitled to a waiver of the requirement he refund the overpayments. Therefore, we remand this matter to the Secretary so he may consider whether, pursuant to 20 C.F.R. §§ 404.501–404.515, Gerstein is entitled to a waiver.

Accordingly, the Secretary's determination is affirmed and the cause remanded to the Secretary for further proceedings in accordance with this opinion.

## ORDER ON THE SECRETARY'S RULE 59(e) MOTION

Now pending is the Defendant Dr. Otis R. Bowen's motion, pursuant to Fed.R. Civ.P. Rule 59(e), to alter or amend the judgment we entered on January 29, 1988. The Secretary takes issue with our order remanding Mr. Gerstein's case to the Social Security Administration for further proceedings. Upon reconsideration, we agree that remand is not necessary and we grant the motion.

In our January 29, 1988 Opinion, we found no due process violation occurs when the Secretary reopens a long dormant case, because there exists a procedure by which worthy persons can avoid reimbursing the Secretary for erroneous overpayments. *See* Opinion of January 29, 1988, at 21–22. We have now learned that a person may initiate the waiver procedures at any time, but that an affirmative request for waiver is required. *See* Social Security Manual § 02245.015. Gerstein has not requested waiver yet, so the Secretary is not obliged to determine whether he is entitled to a waiver of repayment. We believe it improper to order the Secretary to deviate from his established procedures and consider a waiver when none has been requested.

Therefore, we amend the previously entered judgment by deleting the order remanding the case to the Secretary. This order in no way affects Gerstein's right to request a waiver at this or any subsequent

time. This judgment is a final, appealable order.

The Secretary's determination that Gerstein was not retired and thus ineligible for retirement insurance benefits is affirmed.